GRIFFIS, J.,
for the court.
¶ 1. Doris Davis was terminated from her job as patient service representative at Delta Regional Medical Center. Her claim for unemployment benefits was denied on the grounds that Davis was discharged for misconduct. Davis appealed this decision. The appeals referee, the board of review, and the circuit court affirmed the denial of benefits. Finding the *910 record lacked sufficient evidence to support the Commission’s findings, we reverse and remand.
FACTS
¶ 2. Doris Davis was employed as a patient services representative at Delta Regional Medical Center in Greenville. Her position and job responsibilities required her to register patients for admission to the hospital. She interviewed patients and entered their personal and insurance information into the hospital’s computer system. If the patient had previously received services at the hospital, Davis would access the patient’s file and make any necessary changes. If they were a new patient, Davis would create a new computer file for the patient.
¶3. In November of 1999, the hospital implemented a new computer system. Davis testified that she had some trouble learning the new system. Davis received two written warnings for mistakes she made entering patients’s information. In November of 2000, Davis entered a son’s information under his father’s name. Davis was warned that she needed to be more careful. In March of 2001, Davis incorrectly entered a patient’s admission under her cousin’s name. After this second incident, she was told that if she had any more of the same occurrences, she would be terminated. Following the second incident, Davis asked her supervisor to explain how she was making the errors. After Davis’s supervisor demonstrated the proper procedure to her, Davis made no more mistakes.
¶ 4. Davis was terminated in April of 2001 after the hospital discovered that she had entered a patient’s information under the name of another patient, whose name was similar. The mistake was actually made in February of 2001, prior to her second written warning. The hospital learned of the mistake when the wrong patient received a statement from the hospital showing that her insurance had paid a claim for services not rendered. The person billed had not been to the hospital since 1999. She notified the hospital of the incorrect billing and threatened to report the hospital for insurance fraud. The hospital determined that due to the severity of the error, Davis had to be terminated.
¶ 5. Davis filed a claim with the Mississippi Employment Security Commission for benefits. Her claim was denied on the basis that she was terminated for misconduct. This decision was upheld by the Commission’s appeal’s referee, the review board, and again by the circuit court. Aggrieved, Davis has perfected her appeal asserting the circuit court erred in not reversing the board of review because its decision was not supported by substantial evidence.
STANDARD OF REVIEW
¶ 6. “In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.” Miss.Code Ann. § 71-5-581 (Rev. 2002). The Mississippi Supreme Court explained this standard of review in Allen v. Mississippi Employment Security Commission, 639 So.2d 904, 906 (Miss.1994):
This Court’s standard of review of an administrative agency’s findings and decisions is well established. An agency’s conclusions must remain undisturbed unless the agency’s order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one’s constitutional rights. A rebuttable presumption exists in favor *911 of the administrative agency, and the challenging party has the burden of proving otherwise. Lastly, this Court must not reweigh the facts of the case or insert its judgment for that of the agency-
ANALYSIS

I. Whether the circuit court erred in not reversing the board of review because its decision was unsupported by substantial evidence.

¶ 7. The applicable standard of review is a rigorous one and requires appellate courts to affirm the decision of the circuit court where there is substantial evidence to support the finding of facts and where the application of law to the facts is neither arbitrary nor capricious. Here, Davis argues that there is no evidence to support the Commission’s findings that she engaged in misconduct in connection with her employment. She claims that she only made “simple errors or mistakes” while entering data into the computer files.
¶ 8. Miss.Code Ann. § 71-5-513A (l)(b) provides the following:
An individual shall be disqualified for benefits:
(b) For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the commission, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.
¶ 9. In Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982), the Mississippi Supreme Court defined the meaning of misconduct:
The term “misconduct,” as used in the unemployment compensation statute, was conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences [sic] and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered “misconduct” within the meaning of the statute.
The question we must now consider is whether Davis’s actions rose to the level of misconduct defined in the statute. We find that her mistakes did not.
¶ 10. To support this conclusion, we examine two Mississippi cases. In Joseph v. Mississippi Employment Security Commission, 771 So.2d 410 (Miss.Ct.App.2000), Phadalia Joseph was fired from her job as a bank teller due to a shortage of $2000 in her cash drawer. Id. at 411(¶ 1). The Commission determined that Joseph should be denied unemployment benefits because she was terminated for misconduct. Id. at 411(¶2). The facts showed that Joseph had been over or under on her drawer balances by one hundred dollars or less on four or five other occasions. Id. at 412(118). Testimony from the bank indicated that Joseph was not fired because of repetitive mistakes, but only for the $2000 shortage. Id.
*912 ¶ 11. Following the incident, Joseph was not accused of stealing the missing money, nor were the police asked to investigate. Id. at 412(119). The incident was considered to be an honest mistake by the bank. Id. Furthermore, Joseph was not fired for dishonesty, but rather for negligent actions consistent with an alleged bank policy. Id. The policy was that tellers would be automatically terminated following any occurrence of a teller’s balance being off by more than $1000. Id. The bank policy did not articulate that this type of error would be considered misconduct. Id. In reversing the decision of the Commission, the supreme court found this to be a good faith error that did not rise to this level of misconduct within the meaning of the statute. Id. at 414(¶ 13).
¶ 12. Next, in Allen v. Mississippi Employment Security Commission., 639 So.2d 904 (Miss.1994), Waverly Allen was terminated from his job at Vesuvius USA Corporation for poor job performance. Id. at 905. The Commission found that Allen was terminated for misconduct and denied benefits and the circuit court affirmed. Id. The facts showed that Allen operated a machine that ground the surface of a particular part that Vesuvius manufactured. Id. Allen received one verbal reprimand and one -written reprimand for grinding parts undersize. Id. at 906. The later mistake cost the company $4,000, and Allen was demoted to a lower level job. Id. Allen was again reprimanded in writing for sending parts to the wrong station when he finished with them. Id. And finally, Allen was verbally reprimanded and terminated for placing parts improperly on a rack, causing them to be scratched. Id.
¶ 13. The supreme court found that Allen’s acts could not, as a matter of law, constitute misconduct because the record lacked evidence of wrongful intent or evil design. Id. at 907. Further, the court determined that no indication in the record showed that Allen’s negligence would import a wanton disregard of his employer’s interests in the mind of a reasonable person. Id. The Court found that at worst, Allen’s acts of grinding parts undersize were isolated instances of ordinary negligence. Id. The court held:
As we have stated that “failure in good performance as the result of inability or incapacity, or inadvertences [sic] and ordinary negligence in isolated incidents ... [are] not considered ‘misconduct’ within the meaning of the statute,” Allen should not be denied unemployment benefits. Arriola, 408 So.2d at 1383. The determination by the Commission that Allen’s actions were misconduct, so as to deny him benefits, is not supported by substantial evidence, and, thus, is erroneous.
Id. at 908.
¶ 14. Applying the facts of Joseph and Allen to the case at bar, Davis’s actions may not be classified as misconduct under the statute. Like the claimants in Joseph and Allen, at worst Davis’s acts were mistakes or isolated instances of ordinary negligence. The record shows that the hospital had implemented a new computer system. Davis testified that she had trouble learning the new program. She testified that she did not understand how she was making the errors until it was explained to her after her second warning.
¶ 15. The mistake Davis was discharged for actually occurred before her second warning. When this incident occurred, Davis testified she was still having trouble with the new computer system. Davis was also unaware that she could lose her job if she made any more mistakes. The record shows that after Davis was warned that she would be terminated if she committed any more errors of this type, she made no more mistakes. Her behavior is not that *913 of an employee exhibiting a willful disregard for her employer’s interest. Rather, it is that of an employee consciously making an effort to improve her performance.
¶ 16. Indeed, following the standard of review stated in Allen, we find the record lacked sufficient evidence to support the conclusion that Davis’s actions constituted “carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability” or was a showing of a “substantial disregard of the employer’s interest or of the employee’s duties and obligations to [her] employer.” Wheeler, 408 So.2d at 1383. Accordingly, we find Davis is eligible to receive unemployment benefits. Therefore the lower court’s judgment is reversed and remanded to the Commission for a determination of benefits.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED AND REMANDED TO THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ„ CONCUR.